Margot **BERKOVITZ**, et al., Plaintiffs-Appellants,

v.

The **ISLAMIC REPUBLIC OF IRAN**, et al., Defendants-Appellees.

No. 83–2011.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1983.

Decided May 1, 1984.

As Amended on Denial of Rehearing June 26, 1984.

Christopher E. Judge, Masteron, Calhoun, Lundberg & Judge, Richmond, Cal., Theodore C. Hirt, Washington, D.C., for plaintiffs-appellants.

William W. Schofield, Crosby, Heafey, Roach & May, Oakland, Cal., for defendants-appellees.

* Honorable Charles Edward Wyzanski, Jr., United States District Judge, District of Massachusetts, sitting by designation.

Before WALLACE and BOOCHEVER, Circuit Judges, and WYZANSKI,* District Judge.

WALLACE, Circuit Judge:

The wife and children of Martin Berkovitz (the heirs) appeal from a district court order dismissing their wrongful death action against the Islamic Republic of Iran and Kavir, an Iranian revolutionary group. The only questions raised are questions of law reviewable by us de novo. We have jurisdiction of this appeal under 28 U.S.C. § 1291, and affirm the dismissal on the grounds of lack of subject matter jurisdiction and sovereign immunity. *See* 28 U.S.C. § 1330.

## I

Berkovitz, a retired United States Air Force officer, worked in Iran for a California engineering firm. During 1979 the firm handled a copper mining project for the Iranian government. That January, Berkovitz was brutally murdered.

Kavir apparently implicated itself in his murder by its distribution of posters pointing out Berkovitz's Jewish background, accusing him of spying, and warning him or other Americans to leave Iran. The heirs, seeking damages for Berkovitz's wrongful death, sued Iran and Kavir as an instrumentality of Iran. In part of their complaint later voluntarily dismissed with prejudice, they also sued various United States officials in hopes of securing a priority on Iranian assets and preventing any government action that might restrict a wrongful death recovery.

Iran moved to dismiss the complaint on grounds of lack of jurisdiction, improper venue, and failure to state a claim. Iran argued it was immune from suit and that the agreement which led to the release of

the American hostages in Iran settled this wrongful death claim. *See* Declaration of the Government of the Democratic and Popular Republic of Algeria, General Principle B, Jan. 19, 1981, 20 I.L.M. 224 (Algerian Declaration), *enforced by* Executive Order 12283, 46 Fed.Reg. 7927 (Jan. 23, 1981). The district court granted Iran's motion on grounds of sovereign immunity and prior settlement through the Algerian Declaration.

The heirs have treated Kavir as simply an extension of Iran. Our analysis of subject matter jurisdiction over Iran also includes Kavir.

## II

■ The heirs have treated Iran as a foreign state throughout this litigation. In their reply brief on appeal, however, they argue for the first time that it is not a foreign state under the Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94–583, 90 Stat. 2891 (1976) (codified at 28 U.S.C. §§ 1330, 1332(a)(2), (3), (4), 1391(f), 1441(d), 1602–1611) (FSIA). Although we need not address this argument because of its untimely introduction, *see, e.g., Preservation Coalition, Inc. v. Pierce,* 667 F.2d 851, 862 (9th Cir.1982), we observe that it lacks weight. We have recently treated Iran as a foreign state for purposes of the FSIA. *See McKeel v. Islamic Republic of Iran,* 722 F.2d 582 (9th Cir.1983).

■ The heirs alleged several statutory bases for the district court's jurisdiction. Only one, 28 U.S.C. § 1330, provides subject matter jurisdiction of private suits against foreign states, *see McKeel v. Islamic Republic of Iran,* 722 F.2d at 585–87; *see generally* H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 13–14, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6611–13 ("jurisdiction in actions against foreign states is comprehensively treated by the new section 1330...."). Section 1330(a) provides "district courts shall have original jurisdiction ... of any nonjury civil action against a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to

immunity either under sections 1605–1607 of this title or under any applicable international agreement." *See generally Verlinden, B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 1967 n. 5, 76 L.Ed.2d 81 (1983). As section 1330 indicates, sovereign immunity is not merely a defense under the FSIA. Its absence is a jurisdictional requirement. *See id.* at 1971 n. 20.

The heirs argue Iran lacks sovereign immunity in this suit either by virtue of 28 U.S.C. § 1605(a)(1), (2), or (5), or by virtue of the Treaty of Amity, Economic Relations, and Consular Rights, August 15, 1955, United States-Iran, 8 U.S.T. 899, T.I.A.S. 3853 (Treaty of Amity).

■ They initially claim a lack of sovereign immunity flows from the "private" and unfriendly nature of political assassinations. This novel theory, apparently grounded in the 28 U.S.C. § 1605(a)(1) allowance for implicit waivers of immunity, has no merit. *Cf. Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 410, 84 S.Ct. 923, 931, 11 L.Ed.2d 804 (1964) (rejecting an argument that because "relations between the United States and Cuba manifest such animosity that unfriendliness is clear," Cuba should not have access to United States courts). The claim of no sovereign immunity under 28 U.S.C. § 1605(a)(5) also lacks merit. Subsection (a)(5) requires "personal injury, or death ... occurring in the United States...." Berkovitz died in Iran. These arguments disposed of, we address the two remaining potentially meritorious grounds for an exception to sovereign immunity, and thus the availability of jurisdiction under section 1330: first section 1605(a)(2) and then the Treaty of Amity.

## III

■ The FSIA includes as a basic principle that "states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned." 28 U.S.C. § 1602. *See McKeel v. Islamic Republic of Iran,* 722 F.2d at 587 n. 6.

Subsection 1605(a)(2) expands on this theme to provide an exception to sovereign immunity in cases based on "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere [when] that act causes a direct effect in the United States."

Subsection 1603(d) makes clear that "commercial activity" depends on the nature of the activity, not its purpose. Berkovitz's murder, no matter what its purpose, does not have the nature of commercial activity. The legislative history of the FSIA, however, states that "a foreign government's ... employment ... of laborers" or contract "to construct a government building" are examples of commercial activity of the state. H.R.Rep. 94–1487, *supra*, at 16, 1976 U.S.Code Cong. & Ad. News at 6615. If we assume by analogy that Berkovitz's employment, through his company's contract with Iran, meets the requirements of a commercial activity, the act of murder might then become the "act" mentioned in subsection 1605(a)(2). We need not reach this question, however, because the two remaining elements for an exception to sovereign immunity under this clause do not exist. The act of murder did not occur "in connection with" Berkovitz's job, and the act of murder did not "cause[ ] a direct effect in the United States." *See* 28 U.S.C. § 1605(a)(2).

In their complaint, the heirs allege Berkovitz's murder was part of a general plan of political revolution in Iran. Nothing about his murder, however, related to his job, except to the extent his job had brought him to Iran in the first place. This slight connection between the murder and the commercial activity will not suffice for purposes of subsection 1605(a)(2). *Cf. Texas Trading & Milling Corp. v. Republic of Nigeria*, 647 F.2d 300, 311 n. 30 (2d Cir. 1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982) ("Breach of an agreement is necessarily performed 'in connection with' that agreement, or with a series of similar agreements."); *accord Velidor v. L/P/G Benghazi*, 653 F.2d 812, 820 (3d Cir.1981), *cert. dismissed*, 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982).

The political act that caused Berkovitz's death occurred in Iran. Its direct effect was his death in Iran. As the district court in *Verlinden, B.V. v. Central Bank of Nigeria* stated:

> when the victim of a foreign state's tortious conduct is an American citizen injured abroad, the sovereign is protected by immunity and there is no jurisdiction in the American courts. In such cases the injury to the victim's bereaved relatives living in the United States is not sufficiently "direct" or "substantial" to support the assertion of Federal jurisdiction.

488 F.Supp. 1284, 1298 (S.D.N.Y.1980) (footnote omitted), *aff'd on other grounds*, 647 F.2d 320 (2d Cir.1981), *rev'd on other grounds*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); *accord Harris v. VAO Intertourist, Moscow*, 481 F.Supp. 1056, 1065 (E.D.N.Y.1979); *Upton v. Empire of Iran*, 459 F.Supp. 264, 266 (D.D.C.1978), *aff'd without opinion*, 607 F.2d 494 (D.C. Cir.1979). *Cf. In re Rio Grande Transport, Inc.*, 516 F.Supp. 1155, 1163–64 & n. 9 (S.D.N.Y.1981) (where the federal courts have jurisdiction of one claim in an FSIA action that includes pendent wrongful death claims under 28 U.S.C. § 1605(a)(2) from the death of seamen outside the United States, the court has jurisdiction of those pendent claims even though the deaths did not produce direct effects in the United States). *See also Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F.Supp. 542, 549–50 n. 3 (D.D.C.1981); H.R.Rep. No. 94–1487, *supra*, at 19, 1976 U.S.Code Cong. & Ad.News at 6618 (referring to section 18, Restatement of the Law (Second), Foreign Relations Laws of the United States); Restatement of the Law (Second), Foreign Relations Laws of the United States § 18(b)(iii) (1965) (emphasizing "direct and foreseeable result[s]"). We agree; Berkovitz's murder, although the cause of great suffering among his family, did not have that type of direct effect in the United States which would permit jurisdiction by application of 28 U.S.C. § 1605(a)(2).

## IV

The heirs apparently claim the Treaty of Amity constitutes an express waiver of Iranian sovereign immunity for all harms flowing from wrongs against foreign nationals engaged in commercial activity in Iran. If such an express waiver under section 1605(a)(1) existed by operation of the treaty, jurisdiction would be established under section 1330(a) because Iran would "not [be] entitled to immunity under sections 1605–1607," and, in addition, because a "foreign state is not entitled to immunity ... under any applicable international agreement." 28 U.S.C. § 1330(a). The Treaty of Amity, however, will not trigger these provisions.

The Treaty of Amity allows United States nationals to enter Iran "for the purpose of carrying on trade [between Iran and the United States] ... and engaging in related commercial activities." Treaty of Amity, *supra*, art. II, ¶ 1. It requires Iran to give the "most constant protection and security" to Americans in Iran, *id.* at art. II, ¶ 4, and to accord them "fair and equitable treatment," *id.* at art. IV, ¶ 1. In recent years, the spirit of the agreement expressed in these articles has been decimated by revolutionary politics. The treaty's only express provision for waiver of sovereign immunity, however, remains in article XI, paragraph 4: "No enterprise of [Iran] ... including corporations, associations, and government agencies and instrumentalities ... shall, if it engages in commercial, industrial, shipping or other business activities within [the United States] ... claim or enjoy ... immunity [in the United States] ... from ... suit...."

This limited waiver of sovereign immunity extends only to enterprises of Iran, not Iran itself. *See Security Pacific National Bank v. The Government and State of Iran*, 513 F.Supp. 864, 880 n. 23 (C.D.Cal. 1981); *cf. Gibbons v. Republic of Ireland*, 532 F.Supp. 668, 672 (D.D.C.1982) (virtually identical treaty provision) ("This provision clearly waives the immunity of 'enterprises' of the Republic of Ireland owned by the state but is silent as to the sovereign itself."). Furthermore, this limited waiver extends only to enterprises "doing business" in the United States. *See Harris Corp. v. National Iranian Radio and Television*, 691 F.2d 1344, 1350 (11th Cir. 1982); *see also Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1107–08 n. 4 (S.D.N.Y.1982) (virtually identical treaty provision). The heirs have not alleged liability on the part of any Iranian enterprise doing business in the United States. The Treaty of Amity therefore has no application to jurisdiction over their wrongful death action.

## V

We conclude that neither the FSIA nor the Treaty of Amity provides an exception to sovereign immunity that will sustain jurisdiction in this case under 28 U.S.C. § 1330. Because we hold the district court lacked jurisdiction, we do not reach the question whether the Algerian Declaration also precludes the heirs' suit.

AFFIRMED.