743 F.2d 672
 53 USLW 2183
 AUSTRALIAN GOVERNMENT AIRCRAFT FACTORIES and The
Commonwealth of Australia, Petitioners-Appellants,
v.
R.C. LYNNE, Executor and Personal Representative of the
Estate of Jimmy Sherman Lynne, Deceased; Missionary
Aviation Fellowship, Inc.; Donna Lynne, Individually and as
Parent and Next Friend of Kevin Lynne and Kurtis Lynne,
Minors, Respondents-Appellees.
 No. 83-6272.
 United States Court of Appeals,
Ninth Circuit.
 Argued May 9, 1984.
Submitted May 30, 1984.
Decided Sept. 21, 1984.
 
 Mark R. Joelson, Wald, Harkrader & Ross, Washington, D.C., for petitioners-appellants.
 Randall R. Moore, Law Offices of Windle Turley, Dallas, Tex., for respondents-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before ELY, TANG and BOOCHEVER, Circuit Judges.
 TANG, Circuit Judge:
 The Commonwealth of Australia and Government Aircraft Factories bring an interlocutory appeal of the district court's order denying their motion to dismiss for lack of subject matter jurisdiction, personal jurisdiction and improper venue. We reverse.
 I.
 Government Aircraft Factories, wholly owned and operated by the Department of Industry and Commerce of the Commonwealth of Australia, produces military and civilian aircraft for use throughout the world. In 1976, it leased one of its planes, a Nomad 22B, to Missionary Aviation Fellowship (MAF), a California nonprofit corporation that provides transportation and radio services to missionary operations in developing countries. In 1977, MAF exercised its option to buy the plane in Avalon, Australia.
 On July 23, 1979, the plane crashed in Indonesia, killing its American pilot, J.S. Lynne.
 
 
 1
 MAF and Lynne's survivors brought an action in the Central District of California against Government Aircraft Factories and the Commonwealth of Australia alleging that the defendants were liable under strict liability and negligence theories for defects in the design, manufacture, testing, inspection, sale, and service of the aircraft. Lynne's survivors seek damages for wrongful death and MAF claims damages for the loss and destruction of the aircraft.
 
 
 2
 The defendants moved to dismiss the complaint for lack of subject matter jurisdiction, personal jurisdiction and improper venue, arguing that the Commonwealth and GAF, which is not legally distinct from the Commonwealth, are immune from suit under the Foreign Sovereign Immunities Act, 28 U.S.C. Secs. 1330, 1602-1611 (1976) (FSIA). They alleged that they lacked sufficient contacts with the forum for the assertion of personal jurisdiction and that venue was proper, if at all, in the district court for the District of Columbia.
 
 
 3
 The district court denied the motion to dismiss on June 24, 1983, and certified its order on August 19, 1983, for immediate appeal. This court granted permission for an interlocutory appeal under 28 U.S.C. Sec. 1292(b).
 
 II.
 
 4
 The Australian government contends that the district court erred in its conclusion that it could assert subject matter jurisdiction over this case under an exception to the general rule of foreign sovereign immunity. We agree.
 
 
 5
 Under the FSIA, a foreign sovereign maintains immunity from suit for its public acts but not for its commercial acts causing a direct effect in the United States. H.R.Rep. 94-1487, pp. 7-8, reprinted in 1976 Code Cong. & Ad.News 6604, 6605-06; Verlinden v. Central Bank of Nigeria, 461 U.S. 480, 103 S.Ct. 1962, 1968, 76 L.Ed.2d 81 (1983). The statutory scheme of the Act implements the doctrine of immunity but specifies several exceptions to the general rule of foreign sovereign immunity. 28 U.S.C. Secs. 1605-07. If one of these exceptions applies, the district court may assert subject matter jurisdiction under the Act. 28 U.S.C. Sec. 1330. The district court held that the exception codified in Sec. 1605(a)(2) established the basis for subject matter jurisdiction. That section provides that a foreign state shall not be immune in any case in which the action is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."
 
 
 6
 Concluding that the death of the pilot and the damage to the plane overseas caused "direct effects" to the pilot's survivors and the California corporation which owned the plane, the district court held that it could assert jurisdiction over the case in accordance with Sec. 1605(a)(2).
 
 
 7
 The commercial nature of the Australian government's decision to market its aircraft is not disputed. The issue before us is whether the injuries sustained by persons and entities inside the United States as a result of the plane crash abroad are sufficiently "direct" to fall within the "direct effect" exception to the general rule of sovereign immunity.
 
 
 8
 This court has recently addressed the question of whether the effect on survivors of a death occurring abroad as a result of a foreign sovereign's commercial activity constitutes a direct effect within the meaning of the FSIA. In Berkovitz v. Islamic Republic of Iran, 735 F.2d 329, (9th Cir.1984), an American citizen was murdered in Iran by an Iranian revolutionary group. His survivors brought an action against Iran for wrongful death, but the district court dismissed the case, concluding that Iran was protected by sovereign immunity. This court affirmed, holding that the FSIA exception for foreign actions abroad causing direct effects in the United States was not applicable. The court concluded that the direct effect of the Iranian action was the death of the victim inside Iran. The incidental effect on the victim's survivors in the United States, however, was insufficient to constitute a direct effect. " 'In such cases,' " the court observed, " 'the injury to the victim's bereaved relatives living in the United States is not sufficiently "direct" or "substantial" to support the assertion of Federal jurisdiction.' " Id. at 332 (quoting Verlinden, B.V. v. Central Bank of Nigeria, 488 F.Supp. 1284, 1298 (S.D.N.Y.1980), aff'd on other grounds, 647 F.2d 320 (2d Cir.1981), rev'd on other grounds, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). See also Harris v. VAO Intourist, Moscow, 481 F.Supp. 1056 (E.D.N.Y.1979) (injuries to family of American killed in Moscow hotel fire not a "direct effect"); Upton v. Empire of Iran, 459 F.Supp. 264 (D.D.C.1978), aff'd without opinion, 607 F.2d 494 (D.C.Cir.1979) (effect on family of American killed when Iranian Airport terminal collapsed not a "direct effect").
 
 
 9
 Berkovitz controls the disposition of this case. The direct effects of the plane crash in Indonesia are the loss of the pilot's life and the destruction of the aircraft. Under the reasoning of Berkovitz, the injuries to the pilot's family, though tragic and painful, are indirect consequences of the accident and thus cannot support the assertion of subject matter jurisdiction under the direct effect exception to foreign sovereign immunity.
 
 
 10
 Similarly, the property damage claim of Missionary Aviation Fellowship for the loss of the aircraft is an insufficient basis to assert subject matter jurisdiction under Sec. 1605(a)(2).
 
 
 11
 MAF seeks to impose liability on the defendants for the losses sustained from its purchase of an allegedly defective aircraft. The financial loss it seeks to recover, however, is not sufficiently "direct" to overcome the general rule of sovereign immunity. The direct effect of the alleged misconduct was the destruction of the aircraft and the loss of its use when it crashed in Indonesia. The financial loss, including the cost of replacement, which was sustained in the United States by MAF is an indirect consequence of the plane's destruction and the loss of its functional use.
 
 
 12
 The plaintiff's reliance on Texas Trading and Milling Corporation v. Federal Republic of Nigeria, 647 F.2d 300 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982), is misplaced. There, American companies entered into contracts with Nigeria under which the companies would ship cement to Nigeria in exchange for payments to be received through a New York bank. When Nigerian ports became blocked, Nigeria repudiated the contracts and the companies sued. Nigeria claimed immunity under the Foreign Sovereign Immunities Act, but the second circuit, relying on the "direct effect" exception to sovereign immunity, held that the district court could properly assert subject matter jurisdiction over the case. 647 F.2d at 313. The court reasoned that the companies suffered a "direct" effect because "[t]hey were the beneficiaries of the contracts that were breached" and the Nigerian breach precluded payment in the United States through a New York bank. Id. at 312. The court did not have to decide whether an injury to an American corporation overseas would be sufficient in itself to cause an effect inside the United States. The court expressly left open the question of whether a company injured overseas suffers a direct effect in the United States. Id. at 312 n. 5.
 
 
 13
 We conclude that the alleged injury here was not a sufficiently direct effect for the assertion of subject matter jurisdiction. Unlike Texas Trading, where no injury occurred until the American companies were denied payment from a New York bank as a result of Nigeria's repudiation of cement contracts, the direct injury to the American interest in this case occurred overseas where the loss of the plane took place.
 
 
 14
 We conclude that the injuries alleged in this case were indirect effects of the plane crash overseas. Hence, the "direct effect" exception of 28 U.S.C. Sec. 1605(a)(2) is not available to these plaintiffs to abrogate the general rule of foreign sovereign immunity. Because we conclude that the district court lacked subject matter jurisdiction under the FSIA, we need not address the personal jurisdiction or venue issues.
 
 
 15
 The order of the district court denying the motion to dismiss for lack of subject matter jurisdiction is REVERSED and the cause is REMANDED for entry of an order of dismissal.