YUGOEXPORT, INC., (JUGOEXPORT)
and Insurance Institution "Novi Sad",
Plaintiffs-Appellants,

v.

THAI AIRWAYS INTERNATIONAL,
LTD., Garnishee-Defendant-Appellee.

No. 84–3760.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3,. 1984.

Decided Dec. 26, 1984.

Martin D. Detels, Detels, Draper, Madden & Crockett, Seattle, Wash., Francis Matera, New York City, for plaintiffs-appellants.

Jon W. MacLeod, Roberts & Shefelman, Seattle, Wash., for garnishee-defendant-appellee.

Before BROWNING, Chief Judge, and GOODWIN and SKOPIL, Circuit Judges.

PER CURIAM.

Plaintiff Yugoexport appeals the denial of a writ of garnishment against Thai Airways International in an action to enforce a default judgment entered in the Southern District of New York against the Port Authority of Thailand. Because the district court in New York had no jurisdiction of the subject matter under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.*, we affirm.

On May 25, 1976, Yugoexport, Inc. shipped goods to Vientiane, Laos, aboard the ship S/S TREPCA. The shipment of flour, beans and potatoes represented the Yugoslavian government's commitment to the United Nations emergency operation for Laotian relief. The goods were to be trans-shipped at Bangkok, Thailand, where the shipment was temporarily stored in a warehouse operated by the Port Authority of Thailand, an agency of the Royal Thai government. A fire at the warehouse damaged the goods.

Yugoexport, an agency of the Yugoslav government, filed an action in the United States District Court for the Southern District of New York on February 1, 1978, against the Port Authority of Thailand, to recover the value of the destroyed goods. The Port Authority of Thailand has an office in New York and apparently was served. When the Port Authority failed to appear, a default judgment was entered in favor of Yugoexport in the amount of $856,069.21, plus interest.

In an effort to collect on its default judgment, on June 24, 1982, Yugoexport registered the judgment in the United States District Court for the Western District of Washington, and filed a motion for a writ of garnishment pursuant to R.C.W. § 7.33.-010(1)(c) and Fed.R.Civ.P. 69(a). The motion sought garnishment of assets of Thai Airways International, Ltd., which has assets in Seattle. The Royal Thai government owns virtually all the shares of Thai International stock.

The District Court for the Western District of Washington denied the motion for writ of garnishment, holding, *inter alia*, that Thai International was immune from suit under the Foreign Sovereign Immunities Act because none of the Act's exceptions to immunity applied. *See* 28 U.S.C. § 1605(a). The court assumed, without deciding, that the Southern District of New York may have had subject matter jurisdiction over the Port Authority of Thailand, but nevertheless held that Thai Internation-

al's assets were immune from execution on the judgment against the Port Authority. 28 U.S.C. § 1609.

The Foreign Sovereign Immunities Act provides a comprehensive scheme for obtaining jurisdiction over foreign governments and their instrumentalities. Based upon well-established principles of international law, sovereign immunity is denied (and federal jurisdiction available) for the commercial activities of foreign governments in the United States. *See generally,* Wright & Miller, *Federal Practice & Procedure: Civil* § 1111. Jurisdiction in this dispute is allegedly based upon 28 U.S.C. § 1605(a)(2) which permits federal jurisdiction in any case

> in which the action is based upon a commercial activity carried on in the United States by the foreign state ... or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). No party has seriously challenged that the actions of the Port Authority of Thailand involved commercial actions outside the United States. At issue, therefore, is whether the damage to the Yugoexport goods in Bangkok, Thailand, had a direct effect in the United States within the meaning of § 1605(a)(2).

Courts of appeals have announced widely varying definitions of the scope of the "direct effect" language of § 1605(a)(2). *See Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation,* 730 F.2d 195, 200 (5th Cir.1984); *Gilson v. Republic of Ireland,* 682 F.2d 1022, 1027–28 (D.C.Cir.1982); *Texas Trading and Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 310–13 (2d Cir. 1981); *Sugarman v. Aeromexico, Inc.,* 626 F.2d 270, 272–73 (3rd Cir.1980); *In the Matter of Rio Grande Transport, Inc.,* 516 F.Supp. 1155, 1164 (S.D.N.Y.1981).

In *Australian Government Aircraft Factories v. Lynne,* 743 F.2d 672 (9th Cir. 1984), this court adopted a very restrictive interpretation of the § 1605(a)(2) "direct effect" language. That interpretation requires that either an injury or an act occur in the United States for jurisdiction to exist. *Id.* at 674–75. We need not decide the limits of *Australian Government* or the proper limits of "direct effect" jurisdiction because any possible nexus to the United States of the Yugoexport loss of foodstuffs in Bangkok is far less than the nexus in other cases where this court has found no jurisdiction under § 1605(a)(2). *See Australian Government,* 743 F.2d at 674 (plane crash in Indonesia which resulted in death of American pilot and property loss to American corporation had insufficient nexus between the United States and act of the Australian government); *Berkovitz v. Islamic Republic of Iran,* 735 F.2d 329, 332 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 510, 83 L.Ed.2d —— (1984) (death of American in political violence in Iran did not have sufficient direct effect in the United States).

Accordingly, the district court properly denied the writ of garnishment for lack of subject matter jurisdiction.

The order of the district court is affirmed.