**Willie H. HARRIS and Ernestine Harris, Plaintiffs,**

v.

**POLSKIE LINIE LOTNICZE, aka Lot Polish Airlines, a corporation, Defendant.**

**No. C–81–1133 WHO.**

United States District Court, N.D. California.

March 21, 1986.

See also 748 F.2d 94.

Belli & Sabih, Forest Grove, Cal., for plaintiffs.

Condon & Forsyth, Los Angeles, Cal., for defendant.

## OPINION AND ORDER

ORRICK, District Judge.

In this wrongful death action arising out of the crash of an airplane owned by defendant Polskie Linie Lotnicze ("LOT") and on which plaintiffs' decedent, a California resident, was one of the passengers killed, the sole question before this Court is whether in accordance with the Warsaw Convention and the Foreign Sovereign Immunities Act ("FSIA"), Polish law is applicable to the issue of recoverable damages in this case or whether California law is the proper law applicable to the issue of recoverable damages.

This action is before the Court on defendant's motion for determination of applicable law. For the reasons set forth below, the Court grants defendant's motion and holds that Polish law should be applied to the issue of recoverable damages.

### I

On March 14, 1980, an Ilyushin 62–M aircraft owned and operated by defendant LOT crashed while on its final approach near Warsaw, Poland. Walter C. Harris was killed in this accident. Plaintiffs, Wil-

lie and Ernestine Harris, are the parents and sole heirs of Walter C. Harris, and are, as was their son, citizens of the United States. At the time of his death, Walter Harris and his mother, Ernestine, resided in California, and his father, Willie Harris, resided in Illinois.

After plaintiffs filed this action in the Court, it was transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of New York for consolidated pretrial proceedings. Upon completion of the pretrial proceedings with respect to the issue of liability, this action was then remanded to this Court for trial as to what compensatory damages, if any, plaintiffs are entitled to recover for this wrongful death.

### II

The Court begins its inquiry by examining its basis for jurisdiction. Judge Weinstein of the Eastern District of New York previously held in this case that LOT, as an "agency or instrumentality" of the People's Republic of Poland, qualifies as a "foreign state" within the meaning of the FSIA. *In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980*, MDL No. 441, Memorandum and Order Striking Plaintiffs' Jury Demands, at p. 4 (E.D.N.Y. Oct. 19, 1981). As a result, LOT may be sued in federal court only in the manner prescribed by the FSIA. *Id.* Moreover, it is through the FSIA, 28 U.S.C. § 1602 *et seq.* (1976), in conjunction with 28 U.S.C. § 1330(a) (1976), and not through diversity of citizenship, that original jurisdiction over this international dispute is conferred on a federal court. *Corporation Venezolana de Fomento v. Vintero Sales*, 629 F.2d 786 (2d Cir.1980); *Berkovitz v. Islamic Republic of Iran*, 735 F.2d 329 (9th Cir.1984).

The FSIA, by its very terms, is "[s]ubject to existing international agreements to which the United States is a party * * *." 28 U.S.C. § 1604. The United States, not one of the original parties to the Warsaw Convention,[1] announced its inten-

1. Convention for the Unification of Certain

Rules Relating to International Transportation

tion to adhere to it in late 1934. After Senate approval and Presidential proclamation, the Warsaw Convention assumed the status of a treaty, equal in stature and force to the domestic laws of the United States. *In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980,* 705 F.2d 85, 87 (2d Cir.1983). Because at the time of his death, decedent was engaged in "international transportation" within the meaning of Article 1(2) of the Warsaw Convention, the Convention unquestionably applies to this action and governs the rights of the parties herein. *In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980,* 535 F.Supp. 833, 835 (E.D.N.Y.1982). The FSIA is not intended to preempt applicable international agreements; thus, the starting point for any question addressed by the Convention must be the treaty itself.

### A. *The Warsaw Convention.*

■ Although Article 17 of the Warsaw Convention imposed presumptive liability against LOT based upon the occurrence of the accident on board the aircraft, the Convention does not prescribe rules as to the measure of damages recoverable in wrongful death actions. Pursuant to Article 24(2) of the Warsaw Convention, this issue is to be determined pursuant to "applicable local law." Where, as here, jurisdiction is premised exclusively upon the FSIA, the applicable local law to which Article 24(2) refers must necessarily be the FSIA. This is the defendant's position and the correct one.

■ Plaintiffs, on the other hand, argue that applicable local law refers to the choice-of-law doctrines of the forum state. They suggest that Article 28(2) of the Warsaw Convention supports this proposition. Article 28(2) states that "questions of *procedure* shall be governed by the law of the court to which the case is submitted." (Emphasis added.) Plaintiff's reliance is misplaced. The question of what substantive law applies is a procedural question that should be determined by the law of the forum jurisdiction. The question of what

damages are recoverable in a wrongful death action, however, is a substantive one to which Article 28(2) does not apply.

■ Plaintiffs also cite *O'Rourke v. Eastern Air Lines, Inc.,* 730 F.2d 842 (2d Cir.1984), for the proposition that reliance on the forum state's choice-of-law rules is proper in a case arising under the Warsaw Convention. That rule may well be correct, but it does not apply here. In *O'Rourke,* an Eastern Air Lines flight enroute from New Orleans to New York crashed on its approach to John F. Kennedy International Airport. Among those killed was a Greek citizen on his way home to Greece. The decedent's representatives brought a claim against the United States in the Eastern District of New York under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 (1948). Because the decedent was engaged in international transport at the time of the crash, the claim was subject to the terms and conditions of the Warsaw Convention. As required under the Convention, the Court consulted the FTCA, the applicable local law in that case, to determine what substantive law should apply. *Id.* at 847. Under the FTCA, courts must apply the law of the state in which the tortious conduct occurred. *Id.* at 846. Thus, the court applied New York's choice-of-law rules, but not (as plaintiffs suggest) because it was the forum state. *Id.* at 847. The court applied New York law because it was required to do so under the FTCA, as the law of the place where the tortious conduct occurred. *Id.* Thus, while it is proper to apply the choice-of-law rules of the forum state in a case arising under the Warsaw Convention, this is only true to the extent that the forum is the place where the tortious conduct occurred.

Congressional committees have, in fact, rejected the State Department's initial proposal for federal legislation abrogating the sovereign immunity of foreign states, which would have required a foreign state's liability to be determined "in accordance with the law of the forum." Note,

by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876    (1934).

*Foreign Sovereign Immunity and Commercial Activity: A Conflicts Approach,* 83 Colum.L.Rev. 1440, 1456 n. 74 (1983); Lowenfeld, *Claims Against Foreign States—A Proposal for Reform of United States Law,* 44 N.Y.U.L.Rev. 901, 936–37 (1969).

The other authorities cited by plaintiffs in support of their proposition are entirely inapplicable. They are cases premised exclusively on diversity jurisdiction. Were this a diversity case, it would be proper to look to the choice-of-law doctrines of the forum state. *Corporation Venezolana de Fomento,* 629 F.2d at 795. But this is *not* a diversity case. This case involves an important federal question, and this Court acquires subject matter jurisdiction because the choice-of-law rule is one of federal common law derived from the FSIA. *Id.*

### B. *The FSIA.*

The FSIA does not establish a substantive federal rule of liability to be applied in an action against a "foreign state," but instead provides that such "foreign state" shall be liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. The FSIA also does not contain a direct choice of law rule to be applied in an action within its scope. However, § 1606 of the FSIA does contain an implicit choice-of-law rule that directs the court to assess a "foreign state's" liability in accordance with the law of the place where the event giving rise to liability occurred.

Section 1606 provides in pertinent part:

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, *the law of the place where the action or omission occurred* provides, or has been construed to provide, for damages only punitive in na-

ture, the foreign state shall be liable for actual or compensatory damages * * *."

(Emphasis added.) Thus, the above underscored language implies that it was the expectation of Congress, when the FSIA was drafted, that the law applicable to a case arising under that Act would be that of the place where the action or omission occurred that gave rise to the liability. This is essentially the defendant's argument in support of the proposition that the appropriate law in this case is that of the People's Republic of Poland.

The legislative history on the FSIA is silent on the question of choice of law and the meaning of the above-underscored language. Moreover, there are no cases to date that interpret this language in the context of the FSIA. However, the identical language is found in § 2674 of the FTCA, the domestic counterpart of the FSIA, and the Supreme Court in *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), has given it meaning.

Section 2674 of the FTCA provides in pertinent part:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages * * *."

(Emphasis added.) Thus, the language of § 2674 of the FTCA is nearly identical to that of § 1606 of the FSIA, and it is unlikely that this is mere coincidence. Whatever Congress intended in § 2674 of the FTCA, it is almost certainly intended in § 1606 of the FSIA.

In *Richards,* the Supreme Court sanctioned the common sense reading of the

words "the law of the place where the act or omission occurred." In referring to this language, the Court stated that "because the issue of applicable law is controlled by a formal expression of the will of Congress, we need not pause to consider whether the conflict-of-laws rule applied in suits where federal jurisdiction rests on diversity of citizenship shall be extended to a case * * * in which jurisdiction is based upon a federal statute." 369 U.S. at 7, 82 S.Ct. at 590. The Court went on to hold that the meaning of this phrase was, as its ordinary meaning suggests, the law of the place where the negligence occurred. *Id.* at 10–11, 82 S.Ct. at 591–92. Section 2674 of the FTCA has consistently been interpreted to require a court to assess the substantive liability of the United States in accordance with the "whole law" of the state where the incident giving rise to the liability took place, including that state's choice-of-law rule. *Shaw v. United States,* 741 F.2d 1202 (9th Cir.1984).

Applying this construction of the language to § 1606 of the FSIA, it is clear that the law Congress intended to apply to actions arising under the FSIA was that of the place where the tortious conduct occurred. Indeed, in *de Letelier v. Republic of Chile,* 502 F.Supp. 259 (D.D.C.1980), an action for wrongful death arising out of a bomb explosion in the District of Columbia wherein plaintiffs were citizens of Maryland, New Jersey, the District of Columbia, and the Republic of Chile, the court assessed recoverable damages in accordance with § 1606 of the FSIA and the wrongful death statute of the District of Columbia, the place where the incident giving rise to the liability occurred.[2]

Defendant LOT contends that the incident giving rise to the liability in the present case is the crash of the aircraft on its final approach near Warsaw, and therefore that the "whole law" of Poland must be applied. In making this argument, defendant relies on Article 17 of the Warsaw Convention.

Plaintiffs, however, imply that defendant LOT in effect seeks application of a rule that results in the words "place of the act or omission" having the meaning "place where the negligence had its operative effect." That definition was rejected by the *Richards* Court in the FTCA context. Plaintiffs contend that issues of fault have never been resolved in the present case and that the complaint contains general allegations of negligence.

Article 17 of the Warsaw Convention provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

It has consistently been held that Article 17 creates a cause of action against an air carrier for death arising out of an air crash. *Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.,* 737 F.2d 456 (5th Cir.1984), *appeal dismissed,* 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985); *Benjamins v. British European Airways,* 572 F.2d 913 (2d Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). In this context, plaintiff need only establish that an accident occurred to give rise to liability. *See Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 1346, 84 L.Ed.2d 289 (1985). Hence, although plaintiffs' complaint may contain general allegations of negligence, Article 17, providing a presumption of carrier liability, *In re Air Crash Disaster,* 705 F.2d at 87, makes clear that the act of negligence is actually the aircraft crash itself. In other words, the negligent omission was the failure to land the aircraft safely.

---

**2.** In *de Letelier v. Republic of Chile,* 502 F.Supp. 259 (D.D.C.1980), the court assessed recoverable damages in accordance with § 1606 of the FSIA and the wrongful death statute of the District of Columbia, but did so without discussion of why it applied the law it did. Further, the case is not inductively conclusive because the District of Columbia was the forum of the action as well.

This Court finds that in a wrongful death action arising out of an international airplane accident, the law of the place where the incident giving rise to the liability occurred is the law of the place where the accident occurred. Such a finding is consistent with the facilitation-of-remedy purpose of the Warsaw Convention, as modified by the Montreal Agreement.[3] *Air France*, 105 S.Ct. at 1346. To fulfill this purpose, the Montreal Agreement precludes the carrier from asserting the so-named "due care" defenses to liability previously available under Article 20(1) of the Warsaw Convention. To require a determination of where the alleged negligence occurred, an issue of no practical significance, would result in unnecessarily extensive and time-consuming delay that clearly defeats the purpose of remedy facilitation.

Applying the foregoing to the present case, § 1606 requires application of the "whole law" of the place where the incident giving rise to the liability occurred. Because the air crash occurred in Poland, § 1606 dictates application of the "whole law" of the People's Republic of Poland, including its choice-of-law rule. Based upon the uncontested affidavit of Mark S. Scher, Esquire, an expert on Polish law, the Court finds that Poland would apply a *lex loci delicti* choice-of-law rule that in turn requires the application of Polish law to the quantum of recoverable damages in this wrongful death action.[4] *See* Affidavit of Mark S. Sher attached as Exhibit A to plaintiffs' status conference statement filed August 6, 1985, at p. 4.

On this motion to determine applicable law pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, it is not necessary to determine the measure of damages recoverable under Polish law. The Court finds only that such law governs. Accordingly,

IT IS HEREBY ORDERED that defendant's motion for determination of applicable law is granted, and Polish law shall be applied to the issue of recoverable damages.

---

**3.** Liability Limitations of Warsaw Convention and Hague Protocol, Order Approving Agreement CAB 18900, 31 Fed.Reg. 7302 (1966).

**4.** This is not a situation where one party (here the defendant) seeks application of an anachronistic law that would drastically limit or eliminate the damage award. As fully set forth in the Scher affidavit, application of Polish law to the issue of recoverable damages in this wrongful death action would not lead to an unjust or anomalous result. In fact, there is no material difference between Poland's Wrongful Death Statute and California's Wrongful Death Statute. Where, unlike California, Poland does not allow recovery for loss of love, companion-

ship, comfort, society solace or moral support, it does allow an additional award where the living conditions of the relative with whom the decedent lived deteriorated as a result of the death—i.e., where the relative was so grieved he/she could not work. *See* Affidavit of Mark S. Sher, attached as Exhibit A to plaintiffs' status conference statement filed August 6, 1985, at p. 4. These respective awards for nonpecuniary loss are similar enough in theory, and being applied by the United States District Court, should be in practice as well.

In all other respects the statutes are identical and neither limits recovery.