Charles V. MEADOWS, and George Harris, Plaintiffs,

v.

The DOMINICAN REPUBLIC and Instituto De Auxilios Y Viviendas, Defendants.

No. C–80–4626–WWS.

United States District Court, N.D. California.

Feb. 5, 1986.

---

11. The Medical Center is a private not for profit corporation of the State of Delaware.

Ord & Finck, E.O.C. Ord, Kevin W. Finck, George T. Davis, San Francisco, Cal., for plaintiff.

Sanford Jay Rosen, Barbara Y. Phillips, Susan S. Fiering, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

### BACKGROUND FACTS

Defendants, the Dominican Republic and one of its executive agencies, Instituto De Auxilios Y Viviendas ("Instituto"), have moved, pursuant to Fed.R.Civ.P. 60(b)(1) and (4), to set aside the default judgment entered against them.

The documents before the Court establish the following facts. By letter of September 6, 1976, to plaintiffs in South Pasadena, California, the Instituto responded to plaintiffs' offer to obtain financing for it, requesting them to obtain a $12,000,000 loan on specified terms. According to plaintiff Meadow's declaration, plaintiffs had previously contacted a lender's agent in London and determined that funds would be available on those terms. The letter provided for a 2% commission payable on disbursement of the loan and specified that the transaction was to be made through a Dominican bank and plaintiffs' bank. It is not clear from the letter whether plaintiffs were required to take any action other than performance in order to accept the offer.

In December 1976, the Instituto obtained a commitment for a $12 million loan from Citibank in Santo Domingo on terms similar to those specified in the earlier letter. On February 10, 1977, Citibank transmitted executed loan documents to the Instituto. By undated letter, evidently written shortly thereafter, the Instituto advised plaintiffs that the $12 million loan had been satisfactorily consummated and asked them for terms and conditions for a new loan of $20 million. According to plaintiff Meadows, the director of the Instituto called to thank him for arranging the loan. Later in February 1977, plaintiffs asked Citibank in New York for payment of their commission but were refused. The Instituto also rejected their later requests for payment.

After plaintiffs had made unsuccessful collection efforts in the Dominican Republic, they filed suit in this court on December 19, 1980. Service of process was made on defendants through the United States State Department under 28 U.S.C. § 1608(a)(4) after two unsuccessful attempts to serve by registered mail (defendants having failed to return the receipts). In September 1981, the United States Embassy in the Dominican Republic transmitted the summons and complaint to defendants with a note advising them of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1600 et seq. and enclosing a copy of it. The note also informed defendants that a failure to respond could result in a default judgment, that any jurisdictional defense must be raised in the court in which the action is pending, and that it is advisable to consult counsel in the United States. Defendants do not dispute that proper service was made.

When defendants failed to answer or otherwise appear, plaintiffs moved for a default judgment. The judge to whom the case was then assigned dismissed the complaint *sua sponte* for failing to allege facts sufficient to establish personal jurisdiction over defendants. Plaintiffs' motion for re-consideration was denied, 542 F.Supp. 33 (N.Cal.1982), as was their subsequent motion to transfer this action to the Southern District of New York.[1]

Plaintiffs then appealed to the Ninth Circuit, which dismissed the appeal as premature inasmuch as the district court had dismissed only the complaint, not the action, and had therefore not made a final order, 720 F.2d 684. The court remanded the case with instructions to "permit appellants to file an amended complaint or to secure the entry of a final judgment."

Plaintiffs then filed a status conference statement (with supporting affidavits) in the district court arguing the jurisdictional issue, and, at a March 30, 1984, status conference, the court instructed plaintiffs to submit an order for a default judgment. The court signed the default judgment on May 30, 1984, and it was entered on June 1, 1984. Plaintiffs have made no attempt to execute on it.

Throughout the pendency of this action, plaintiffs sent defendants copies of all significant pleadings filed by them and defendants acknowledge receiving them. On September 4, 1984, plaintiffs mailed (unsigned) copies of the default judgment in English and Spanish to defendants in conformity with 28 U.S.C. § 1608(a) and (e). Defendants received them on October 15, 1984, but did not return the certified mail receipt or take other action. Plaintiffs attempted another mailing in February 1985 but received no receipt. In the absence of any receipt, plaintiffs in March 1985 again resorted to service through the State Department. After receiving the judgment from the Embassy, defendants retained American counsel and filed this motion on April 10, 1985. A hearing was held on December 6, 1985. On January 7, 1986, defendants applied to the Court for leave to file a supplemental memorandum raising a new issue, and on January 9, 1986, for

---

1. Defendants make much of the fact that shortly after filing this action, plaintiffs filed suit in the Southern District of New York solely against the Instituto. The significance they attach to this fact apparently relates to the issue of the Instituto's juridical separateness. In light of the Court's resolution of that issue, *infra* § C-4, this fact is irrelevant.

leave to file a further declaration to support their motion.

### DISCUSSION

Defendants move for relief from the judgment on two grounds: first, that it is void, Fed.R.Civ.P. 60(b)(4), and, second, that it was the result of excusable neglect, Fed.R.Civ.P. 60(b)(1). For the reasons to be discussed, neither ground is meritorious and the motion will therefore be denied.

### I. RELIEF UNDER FED.R.CIV.P. 60(b)(4)

Defendants' contention that the judgment is void is based on two arguments: first, that this court lacked subject matter jurisdiction and, second, that it lacked personal jurisdiction over defendants when it entered judgment.

■ A motion for relief under Rule 60(b)(4) must be made within a reasonable time. *See Bookout v. Beck,* 354 F.2d 823, 825 (9th Cir.1965). The judgment was entered on June 1, 1984; the motion was filed on April 10, 1985. Having been filed within a year from entry of judgment and before plaintiffs took steps to execute on it, the motion will be considered timely.

Unlike motions under other provisions of Rule 60(b), this motion is not addressed to the court's discretion. Either the judgment is void or it is valid. The question of the judgment's validity is therefore one of law. *Thos. P. Gonzalez Corp. v. Consejo Nacional de Costa Rica,* 614 F.2d 1247, 1256 (9th Cir.1980).

Moreover, defendants have not waived their jurisdictional defenses by failing to appear. If the judgment was entered without either subject matter or personal jurisdiction, it is void. *Thos. P. Gonzalez, supra,* 614 F.2d at 1255.

### A. The FSIA

Disposition of this motion requires the Court to consider a number of issues arising under the FSIA. That Act has been said to "present[s] a peculiarly twisted exercise in statutory draftmanship." *See*

*Vencedora Oceanica Navigacion v. Compagnie Nationale Algerienne de Navigation,* 730 F.2d 195, 205 (5th Cir.1984) (Higginbotham, J., concurring and dissenting). As a result it has produced a body of case law somewhat obscure and confusing and at times seemingly inconsistent. Nevertheless, application of the statutory provisions to the facts of this case compels the conclusion that this motion is without merit.

■ By adopting the FSIA, Congress intended to provide nationwide and uniform regulations for the maintenance of suits against foreign states and their entities in the courts of the United States. 28 U.S.C. § 1330(a) grants to the federal courts original jurisdiction over suits against a foreign state where the foreign state is not entitled to immunity under §§ 1605–1607 of the FSIA. Section 1330(b) provides that personal jurisdiction exists as to such claims where service has been made under § 1608. Thus, the court's first inquiry, whether subject matter jurisdiction exists, entails application of the substantive provisions of the FSIA to determine whether an exception to sovereign immunity applies. *See Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983). Subject matter jurisdiction, or competence, cannot be waived; even if the foreign state has not appeared the district court must determine whether immunity is unavailable under the FSIA. *Id.* at 494 n. 20, 103 S.Ct. at 1971 n. 20.

Although a literal reading of § 1330(b) suggests that personal jurisdiction exists whenever service of process is made under § 1608 and an exception to sovereign immunity applies, courts have uniformly imported constitutional due process standards into the statute. *See Texas Trading v. Federal Republic of Nigeria,* 647 F.2d 300, 313–15 (2d Cir.1981). Thus, the jurisdictional analysis remains two-fold: the Court must determine, first, whether this case falls within a statutory sovereign immunity exception, and second, whether exercise of personal jurisdiction is constitutionally per-

missible. *See Gilson v. Republic of Ireland,* 682 F.2d 1022, 1026 (D.C. Cir.1982)

### B. Subject Matter Jurisdiction

The FSIA codifies the principle of sovereign immunity but restricts immunity to claims involving a foreign state's public acts; immunity does not extend to claims based on a state's commercial or private conduct. *See* H.R.Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S. Code Cong. & Admin.News, 6604, 6605 ("House Report"). Section 1605(a)(2) defines three categories of actions arising out of commercial activity to which immunity is denied:

    (i) actions based on a commercial activity carried on in the United States;

    (ii) actions based on an act performed in the United States in connection with a commercial activity elsewhere; and

    (iii) actions based on an act outside the United States in connection with commercial activity elsewhere where the act causes a direct effect in the United States.

The distinctions between these categories are material and result in somewhat different jurisdictional analyses depending on which category is invoked. In this case jurisdiction is premised only on the third category. Accordingly, it is immaterial whether defendants conduct commercial activities in the United States or whether they performed acts here in connection with a commercial activity elsewhere. *Cf. Vencedora, supra,* 730 F.2d at 199.

■ Applying the third category, the first question is whether defendants' efforts to obtain a loan to finance a housing project in the Dominican Republic constituted a commercial activity within the meaning of § 1605(a)(2). Section 1603(d) states that the commercial character of an activity shall be determined by the activity's nature, and not by reference to its purpose. The House Report explains that if the act is one that could be done by a private person, including a contract for goods or services, it will be considered a commercial activity. House Report, *supra*

at 6615. The fact that goods or services are to be used for a public purpose is irrelevant, *id.* Therefore, the only relevant facts for this analysis are those pertaining to the contract between plaintiffs and defendants.

Plaintiffs allege that defendants contracted for their services to obtain a loan for them. This is an activity routinely engaged in for profit by private individuals and corporations. Whether the purpose of the loan was public or private is immaterial. Nothing before the Court suggests that this transaction was anything but commercial, and defendants have not contended otherwise.

The pivotal issue in the application of the third category is whether the alleged breach of defendants' contractual obligation to pay plaintiffs a commission had the requisite "direct effect in the United States." The breach, i.e., the refusal to pay, as well as the commercial activity from which it arose all took place outside of the United States. Plaintiffs, however, reside in the United States and would eventually have received the commission there had it been paid.

The most closely analogous case is *Texas Trading, supra,* arising out of the Nigerian government's refusal to honor contracts for the purchase by it of cement. The contracts were backed by letters of credit issued by the Central Bank of Nigeria. That bank used as its agent for making payments to sellers in the United States the Morgan Guaranty Trust Company of New York. The court held that the direct effect clause was satisfied because (1) breach of the contract had a direct effect on the sellers who suffered a resulting financial loss, and (2) the loss occurred in the United States because the sellers were American and were to be paid in the United States.

The instant case presents substantially similar facts. Plaintiffs are United States citizens who have suffered financial injury in the United States as a direct result of defendants' alleged breach. It is true that the contract in this case does not call for

payment at a specified bank or other location within the United States. It does, however, provide that the "transaction must be made through our bank ... *and through your* [plaintiffs'] *bank."* (Emphasis added) Thus the contract entitles plaintiffs to specify the place of payment; since plaintiffs reside in the United States, defendants could reasonably have expected that payment would be called for at a bank in the United States.

These circumstances satisfy the direct effect test.[2] To hold otherwise would tend to frustrate the Congressional purpose of providing "access to the courts" to American citizens aggrieved by the commercial acts of a foreign sovereign. *See* House Report at 6605. *See also Velidor v. L/P/G Benghazi,* 653 F.2d 812, 820 n. 13 (3rd Cir.1981) (direct effect where foreign seaman brought to the United States without wages due to defendant's breach of employment contract); Note, *Effects Jurisdiction Under the Foreign Sovereign Immunities Act and the Due Process Clause,* 55 N.Y.U.L.Rev. 474, 508–13 (1980).[3]

### C. Personal Jurisdiction

Defendants' attack on the judgment on the ground of lack of personal jurisdiction raises three issues:

1. May defendants be subjected to general jurisdiction, as opposed to jurisdiction based on the transaction sued on?

2. If general jurisdiction is an appropriate standard, is the sufficiency of defendants' contacts to be determined with reference to the entire United States?

3. If not, did defendants' contacts within California suffice to satisfy due process requirements?

### 1. General Jurisdiction

Defendants contend that only contacts in the United States related to the transaction at issue (specific jurisdiction) are relevant in determining whether the exercise of personal jurisdiction is constitutionally permissible. Acceptance of this contention would greatly contract the direct effect exception of the FSIA, since by definition this exception applies only to commercial activity *outside* of the United States; commercial activity occurring in whole or in part within the United States is covered by the first two categories of exceptions. Thus, as a matter of statutory interpretation, this contention must be rejected.

Nor does due process require its acceptance. The Supreme Court enunciated the constitutional limits on the exercise of personal jurisdiction over foreign corporations in *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984), stating:

> Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum state, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437 [72 S.Ct. 413, 96 L.Ed. 485] (1952)....

Congress intended to subject foreign states engaging in commercial activities within the scope of § 1605(a)(2) to liability to the same extent as private persons. *See* 28 U.S.C. § 1606; *Verlinden,* 461 U.S. at 488–89, 103 S.Ct. at 1968–69. Thus, the Court's reasoning applies with equal force here to deny any constitutional bar to the exercise of general jurisdiction over a foreign de-

---

**2.** Cases under state law defining direct effect for state jurisdictional purposes are not on point. Those cases concern issues of federalism, not international relations with which Congress was concerned in adopting the FSIA. *See Texas Trading,* 647 F.2d at 312.

**3.** Contract cases must be distinguished from personal injury cases; an act injuring a person

outside the United States does not have a direct effect in the United States even if it also causes incidental loss to others affected, such as family members in the United States. *See Australian Gov't Aircraft Factories v. Lynne,* 743 F.2d 672, 675 (9th Cir.1984); *Berkovitz v. Islamic Republic of Iran,* 735 F.2d 329 (9th Cir.1984).

fendant.[4] *See also Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1315–16 (9th Cir.1985), implicitly adopting the same view.

*Olsen by Sheldon v. Gov't of Mexico,* 729 F.2d 641 (9th Cir.1984), provides no support for defendants' position. In that action for wrongful death based on state law, the court found sufficient contacts from the transaction at issue to establish specific jurisdiction and therefore found it unnecessary to determine whether general jurisdiction existed. It specifically stated, however, that jurisdiction over a non-resident defendant may be founded on substantial, continuous and systematic contacts with the forum unrelated to the cause of action. *Id.* at 648. *Vencedora, supra,* is not in point because that court did not address the personal jurisdiction issue, but held only that where the immunity exception invoked is based on commercial activity carried on in the United States (the first category), commercial activity unrelated to the claim could not support its application. 730 F.2d at 199. Plaintiff there was a foreign corporation that had suffered harm abroad; since its claim had no substantial nexus with the United States, it did not and could not invoke the direct effect exception (the third category) at issue here. *Harris v. VAO Intourist,* 481 F.Supp. 1056 (E.D. N.Y.1979), held simply that a plaintiff maintaining a wrongful death action on account of his decedent's death in a hotel fire in Moscow could not show the requisite direct effect within the meaning of the third category. Although the opinion makes no analytical distinction between the subject matter and personal jurisdiction issues, it says no more than the appellate decisions in personal injury actions under the FSIA. See *supra,* p. 605 n. 3. The opinion in *Chicago Bridge v. Islamic Re-*

*pub. of Iran,* 506 F.Supp. 981, 989–90 (N.D. Ill.1980), analyzes personal jurisdiction in terms of the direct effect exception. Its analysis is based in part on the lower court opinion in *Verlinden* subsequently reversed by the Supreme Court and on personal injury cases that do not come to grips with the issue of general jurisdiction under the FSIA. None of these cases can be read as lending any support to defendants' position that, either as a matter of statutory interpretation or due process analysis, personal jurisdiction under the FSIA may not be founded on general jurisdiction.

### 2. Contacts in the United States

Defendants proceed on the assumption that the relevant contacts must be with the forum state, California. But the Supreme Court has noted that jurisdiction under the FSIA is only limited by the requirement of "some form of substantial contact with the United States." *Verlinden,* 461 U.S. at 490, 103 S.Ct. at 1969. Defendants rely on cases in which federal jurisdiction was premised on diversity, *see, e.g., Thos. P. Gonzalez,* where the court borrowed the state long-arm statute and thus was bound by the same jurisdictional limits as the state courts. By contrast, the FSIA provides its own long-arm statute in § 1330, *see* House Report at 6612, and § 1608 provides for world-wide service of process.[5] The court in *Texas Trading,* noting these factors, ruled that "[s]ince service was made under § 1608, the relevant area in delineating contacts is the entire United States, not merely New York [the forum state]." 647 F.2d at 314.

The court in *Texas Trading* reasoned by analogy from cases arising under the federal securities acts. 647 F.2d at 314. It is settled that under federal statutes authorizing nationwide service, "the question be-

---

**4.** The statement that the FSIA collapses subject matter and personal jurisdiction, *see McKeel v. Islamic Republic of Iran,* 722 F.2d 582, 588, 589–90 n. 10 (9th Cir.1983), does not mandate that more stringent due process requirements apply under the FSIA. *See* § A, *supra.* To the contrary, the due process requirements that courts have read into the statute are only those required by the constitution, and the Supreme

Court's ruling in *Helicopteros,* 104 S.Ct. at 1872, is therefore controlling.

**5.** Thus federalism concerns that animate the caselaw where state long-arm statutes are at issue are not present in cases brought under the FSIA.

comes whether the party has sufficient contacts with the United States, not any particular state." *Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1315 (9th Cir.1985). The court there stated that " 'minimum contacts' with a particular ... state for purposes of personal jurisdiction is *not* a limitation imposed on the federal courts in a federal question case by due process concerns. The Constitution does not require the federal districts to follow state boundaries ..." *Id.* at 1315, quoting *Johnson v. Creative Arts & Wool Masters, Inc.,* 743 F.2d 947, 950 (1st Cir.1984) (emphasis added). *See also Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974); *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1340–43 (2d Cir.1972).

■ Cases brought under the FSIA are analogous, for they too arise under a federal statute. *Verlinden, supra,* 461 U.S. at 497, 103 S.Ct. at 1973. Accordingly, it is the federal court, not the state, that exercises jurisdiction over defendants, and the relevant contacts are those with the United States generally.

The criteria for assessing those contacts were stated in *Texas Trading* as follows:

> ... the extent to which defendants availed themselves of the privileges of American law, the extent to which litigation in the United States would be foreseeable to them, the inconvenience to defendants of litigating in the United States, and the countervailing interest of the United States in hearing the suit.

*Id.* at 314. *See also Schmidt v. Polish People's Republic,* 579 F.Supp. 23, 28 (S.D.N.Y.1984).

■ Applying those factors to the instant transaction, by negotiating for and obtaining the services of American businessmen through the use of the United States mail and phone systems, and agreeing to pay them in United States dollars at their chosen bank, defendants should have foreseen that litigation in this country might follow in the event that they failed to meet their obligations. *See Gilson v. Republic of Ireland,* 682 F.2d 1022, 1028

(D.C.Cir.1982); *Schmidt,* 579 F.Supp. at 28. Moreover, defendants have repeatedly availed themselves of the privileges of American law by seeking recourse in the courts of the United States. *See Dominican Republic v. Roach,* 280 F.2d 59 (D.C. Cir.1960) (contract action); *Dominican Republic v. Peguero,* 225 F.Supp. 342 (S.D.N.Y.1963) (action to enjoin defendant from acting as Dominican Consul). Equity dictates that one who seeks relief in the United States courts be required to respond to claims for relief against it in those courts. *Cf. First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 630–32, 103 S.Ct. 2591, 2601–03, 77 L.Ed.2d 46 (1983) (foreign state seeking relief in United States court may not assert sovereign immunity defense to counterclaim). In addition, plaintiffs in their prior memorandum (Docket 30) enumerated numerous contacts by defendants relating to airline operations and tourist promotion in the United States. *See also Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1372, 1378 (5th Cir.1980) (describing Dominican state airline's commercial activities in United States). Defendants have neither controverted these facts nor come forward with any reason why litigating in the United States would be a hardship for them. Finally, the United States has a strong interest in providing a forum to citizens such as plaintiffs whose efforts to obtain relief in the courts of the Dominican Republic were effectively blocked by defendants. *See* Affidavit of Meadows (Docket 21). Accordingly, defendants' contacts in the United States are constitutionally sufficient to sustain the exercise of personal jurisdiction.

### 3. Contacts with California

■ Even if the relevant contacts were confined to California, defendants' contacts must be found to be sufficiently substantial, continuous and systematic, *see Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1287 (9th Cir.1977), to establish that they have purposefully availed themselves of the privilege of conducting

activities within this state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The Court takes judicial notice of the fact (not denied by defendants) that the Dominican Republic has maintained consulates in San Francisco and Los Angeles for some fifty years. This activity by defendant Dominican Republic is chargeable to its agency, defendant Instituto, since a government maintaining a consulate acts on behalf and for the benefit of all of its constituent parts. *See Texas Trading, supra*, 647 F.2d at 314. Defendants thus have maintained a substantial and continuous presence in California, availing themselves of the privilege of conducting business here and invoking the benefits of California law (even apart from their activities in connection with the instant transaction).

None of the cases cited by defendants involve a defendant present in the forum on such a continuous and substantial basis. *See, e.g., Paccar Intern., Inc. v. Comm'l Bank of Kuwait*, 757 F.2d 1058 (9th Cir. 1985) (specific jurisdiction, lack of general jurisdiction conceded); *Thos. P. Gonzalez, supra*, at 1249 ("During this period, the Consejo had neither an office, a place of business, property nor an agent in California."). Accordingly, the exercise of personal jurisdiction over defendants in this case is constitutionally permissible under either geographical standard.

### 4. Instituto as a Separate Entity

In their supplemental memorandum filed in January 1986 following the hearing, defendants contend for the first time that the Instituto is a separate juridical entity under Dominican law, and that therefore its acts are not attributable to the Republic. If that were so, the latter would not be properly joined as a defendant and its contacts within the United States would afford no basis for personal jurisdiction over the Instituto, which presumably has none.

For the issue of the Instituto's separateness to be properly before the Court at this stage, it must go directly to the validity of the judgment, i.e., to subject matter or personal jurisdiction. The Supreme Court squarely has held that the FSIA does not "affect the substantive law determining the liability of a foreign state or instrumentality, or the attribution of liability among instrumentalities of a foreign state." *First Nat. City Bank, supra*, 462 U.S. at 620, 103 S.Ct. at 2596. In that case, the Court held that the FSIA did not control whether Cuban assets could be offset against the claims of an instrumentality established and partly owned by the Cuban government. It looked instead to a variety of sources of substantive law.

■ *First Nat. City Bank* treats the issue of juridical separateness as one of substantive law, not subject matter jurisdiction. It is therefore not open for consideration at this stage, for an error of law is not a ground for vacating a default judgment as void. *Jones v. Giles*, 741 F.2d 245, 248 (9th Cir.1984). A fortiori the issue is not open for consideration in determining whether personal jurisdiction existed. Accordingly, defendants' post-hearing request for leave to file supplemental materials will be denied.

### II. RELIEF UNDER FED.R.CIV.P. 60(b)(1)

■ Defendants also seek relief from the judgment under Rule 60(b)(1) on the ground of "excusable neglect." The rule requires that such a motion "shall be made within a reasonable time, and ... not more than one year after the judgment ... was entered or taken." This motion was filed nearly eleven months later. Because plaintiffs did not attempt to execute on the judgment, however, defendants had no compelling incentive to attack the judgment sooner. Accordingly, defendants' Rule 60(b)(1) motion will be considered timely.

A motion under Rule 60(b)(1) is properly denied if plaintiffs will be prejudiced, or if the culpable conduct of defendants led to the default, or if defendant has not demonstrated a meritorious defense. *Pena v. Seguros La Comercial*, 770 F.2d 811 (9th Cir.1985). All three grounds exist here.

### A. Defendants' Culpable Conduct

Defendants contend that the judgment should be vacated for excusable neglect, based on reliance on legal advice. The so-called legal advice consists of what defendants describe as an opinion solicited from an "Advisory/Consulting Commission" by the then sub-secretary of the Dominican Republic's Foreign Affairs office. No evidence of the contents of that opinion is before the Court. Defendants offer only the conclusory statement that the opinion was "that the Dominican Republic should not appear before the American tribunals nor be represented before such courts." Defendants have submitted a number of vague, conclusory and somewhat contradictory declarations and documents but none establish that any reasoned legal advice, based upon an examination of the facts and the law, was given by a competent person and relied upon by a responsible decision maker.

██ Moreover, allegedly erroneous legal advice is not sufficient to establish excusable neglect where the party is (a) fully informed of the relevant legal considerations, and (b) sufficiently sophisticated and experienced to protect its interests. *See Wilson v. Moore & Associates, Inc.,* 564 F.2d 366, 368 (9th Cir.1977); *United States v. Cirami,* 535 F.2d 736 (2d Cir.1976); *Cline v. Hoogland,* 518 F.2d 776 (8th Cir. 1975); *Patapoff v. Vollstedt's, Inc.,* 267 F.2d 863, 865 (9th Cir.1959).

██ Defendants were fully informed of the relevant legal considerations by the transmittal note from the State Department, which told them explicitly that failure to appear in response to process could lead to a default judgment and that they should consult American counsel.

Defendants moreover are experienced and sophisticated litigants in American courts. *See Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371 (5th Cir. 1980); *Dominican Republic v. Roach,* 280 F.2d 59 (D.C.Cir.1960); *Dominican Republic v. Peguero,* 225 F.Supp. 342 (D.N.Y. 1963). Indeed, in *Arango,* the court of

appeals decided on July 25, 1980, that the national airline of the Dominican Republic was subject to suit in the United States under the FSIA. It is difficult to imagine how defendants could have received more authoritative advice about the applicability of the FSIA than the opinion of the court of appeals rendered just six months before this action was filed.

### B. Prejudice to Plaintiffs

The transactions on which plaintiffs' claim is based occurred nearly ten years ago. The action was filed five years ago. One witness, Peter Culbertson, has died. One of the plaintiffs, Charles Meadows, is seriously ill and unable to testify. Another witness, Antonia Alma, has disappeared. Defendants' effort to shift the blame for the lapses of time on plaintiffs comes with ill grace considering their adamant and persistent refusals to respond. Having placed substantial obstacles in plaintiffs' way, they are in no position now to deny the prejudicial consequences of their conduct.

### C. Meritorious Defense

Although it is not necessary in view of the foregoing findings, the Court has considered the merits of defendants' position. The documents before the Court are sufficient to establish a written promise to pay plaintiffs a commission if they procured a loan for the Instituto. Whether a binding contract was formed and whether plaintiffs performed under that contract are questions that would have been resolved at trial. They cannot be resolved on the record before the Court. On that record it cannot be said that defendants have meritorious defenses on the merits of the claim. In any event, as explained in §§ B and C, they are not entitled to raise them now. That they have no jurisdictional defense has heretofore been established.

### Conclusion

For the reasons stated, the motion is denied.

IT IS SO ORDERED.