877 F.2d 793
 14 Fed.R.Serv.3d 69
 AMERICA WEST AIRLINES, INC.; Protection Mutual Insurance
Company, Plaintiffs-Appellants,
v.
GPA GROUP, LTD.; Aer Linte Eireann Teoranta; Aircraft
Technical Services, Inc., Defendants,
and
GPA Corporation; Airmotive Ireland, Ltd.; United
Technologies Corporation; Pratt & Whitney,
Defendants-Appellees.
 No. 88-1657.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 16, 1988.
Decided June 12, 1989.
 
 Arthur S. Beeman, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for plaintiffs-appellants.
 Eileen J. Moore, Snell & Wilmer, Joseph A. Schenk, Beus, Gilbert, Wake & Morrill, and James Ackerman, Jennings, Strouss & Salmon, Phoenix, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before FLETCHER and BEEZER, Circuit Judges, and KING,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 America West Airlines appeals the district court's judgment dismissing its suit to recover damages allegedly occurring as a result of faulty engine maintenance by one of the defendants. We affirm.
 
 I. FACTS
 
 2
 This lawsuit arises as a result of damages sustained by America West Airlines ("AWA") when one of its aircraft engines stalled and caught fire shortly after takeoff from Omaha, Nebraska. Although the aircraft landed safely, the engine was destroyed. AWA alleges that it suffered damages in excess of $500,000 due to the loss of the engine. Many of the relevant jurisdictional facts, including the identities of the parties, are disputed.
 
 
 3
 This litigation has its genesis in a July 18, 1984 aircraft purchase agreement between AWA and GPA Leasing (NA) N.V., a corporation organized and existing under the laws of the Netherlands Antilles. The agreement provided that AWA would purchase a Boeing 737-200 jet aircraft, and that the fitted engines on the aircraft would be replaced with two freshly overhauled JT8D-9A Pratt & Whitney engines.[1] The agreement provided that the law of Arizona would govern its interpretation. Prior to shipment to AWA, one of the engines was serviced, inspected, repaired and overhauled by Airmotive Ireland, Ltd. ("Airmotive"), a subsidiary of Aer Lingus, PLC.[2]
 
 
 4
 The engine was installed on November 3, 1984 on another Boeing 737 aircraft owned by AWA. On November 24, 1984, the aircraft, which was bound for Phoenix from Omaha, Nebraska, experienced difficulty. The engine stalled and caught fire. Although the pilot landed the aircraft, the engine was destroyed. AWA asked GPA Corporation to replace the engine, and GPA refused, agreeing "to process a warranty claim against Airmotive." AWA never received a replacement engine.
 
 
 5
 On October 29, 1986, AWA filed a complaint in the United States District Court for the District of Arizona against Aerlinte, Airmotive, GPA Group, Ltd. and GPA Corporation, alleging negligence, breach of express and implied warranties, strict liability, fraud and negligent misrepresentation. One day later, AWA filed a similar action in Arizona state court.
 
 
 6
 On February 10, 1987, Airmotive and Aerlinte filed a motion to dismiss for lack of personal and subject matter jurisdiction, insufficient service of process, and failure to state a claim. On February 23, 1987, AWA filed an amended complaint, adding Protection Mutual Insurance Company as a plaintiff and United Technologies Corporation and Pratt & Whitney as defendants. Aerlinte and Airmotive moved to dismiss the amended complaint on March 4, 1987.
 
 
 7
 On May 8, 1987, AWA submitted a motion for leave to file a second amended complaint in which it attempted to add an allegation of breach of contract against Aer Lingus. One week later, appellee GPA Corporation filed a motion to dismiss the amended complaint for lack of personal jurisdiction and failure to state a claim. On June 17, 1987, United Technologies and Pratt & Whitney filed a motion to dismiss the amended complaint for lack of personal and subject matter jurisdiction and failure to state a claim.
 
 
 8
 Oral argument on all outstanding motions was heard on July 27, 1987. On January 11, 1988, the district court issued an order granting all of the motions to dismiss and denying AWA's motion for leave to amend. AWA timely appeals.
 
 II. JURISDICTION UNDER THE FSIA
 
 9
 The district court concluded that it lacked subject matter jurisdiction over this action. The existence of subject matter jurisdiction is a question of law which we review de novo. Peter Starr Production Co. v. Twin Continental Films, Inc., 783 F.2d 1440, 1442 (9th Cir.1986). With respect to the claims against Aerlinte and Airmotive, the only basis for federal jurisdiction asserted by AWA is the jurisdiction-conferring provision of the Foreign Sovereign Immunities Act ("FSIA," or "the Act"), codified at 28 U.S.C. Sec. 1330(a). Section 1330(a) creates in the district courts
 
 
 10
 original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.
 
 
 11
 It is undisputed that Aerlinte and Aer Lingus, which are fully owned by the Republic of Ireland, fall within the definition of a "foreign state" under section 1603(a). Subject matter jurisdiction in this dispute therefore depends upon whether the defendants are entitled to sovereign immunity. The FSIA provides that a foreign state and its instrumentalities are immune from suit unless one of the specific exceptions enumerated in the Act applies. 28 U.S.C. Secs. 1604, 1605-07; Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 485 n. 5, 103 S.Ct. 1962, 1967 n. 5, 76 L.Ed.2d 81 (1983).
 
 
 12
 AWA asserts that one or more of the "commercial activities" exceptions outlined in section 1605(a)(2) operates to divest the defendants of sovereign immunity. That section provides:
 
 
 13
 (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]
 
 
 17
 28 U.S.C. Sec. 1605(a)(2).
 
 
 18
 In this case there is no dispute that Airmotive's engine overhaul work is "commercial activity." The issue is whether there was a sufficient nexus with the United States to fall within section 1605(a)(2). AWA asserts that both the first clause (commercial activities carried on in the United States) and the third clause (commercial activities carried on outside the United States having a "direct effect" in the United States) apply in this case. These arguments are addressed in turn.
 
 
 19
 A. Commercial Activities "in the United States"
 
 
 20
 AWA first asserts that this action falls within the first clause of section 1605(a)(2), being based upon commercial activity carried on in the United States by the Republic of Ireland through its wholly-owned commercial subsidiaries. The fact that the Republic of Ireland carries on commercial activities in the United States is, in itself, insufficient to create jurisdiction under the first clause of section 1605(a)(2). There must be a nexus between the defendant's commercial activity in the United States and the plaintiff's grievance. See Compania Mexicana de Aviacion, S.A. v. United States Dist. Court, 859 F.2d 1354, 1360 (9th Cir.1988); see also Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation, 730 F.2d 195, 199-204 (5th Cir.1984); Sugarman v. Aeromexico, Inc., 626 F.2d 270, 272-73 (3d Cir.1980). The commercial activity relied upon by AWA to establish jurisdiction must be the activity upon which the lawsuit is based. See Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 452 (6th Cir.1988). The focus must be solely upon "those specific acts that form the basis of the suit." Joseph v. Office of the Consulate General, 830 F.2d 1018, 1023 (9th Cir.1987),cert. denied, --- U.S. ----, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988) (emphasis in original).
 
 
 21
 There is no nexus between AWA's cause of action and any commercial activities carried on by the Republic of Ireland in the United States. The only commercial activities alleged by AWA to be carried on in the United States by the Republic of Ireland involve Aerlinte's operation of a commercial airline which carries passengers between the United States and Ireland. However, AWA's claim does not in any way relate to Aerlinte's commercial operations.[3] The "specific acts that form the basis of the suit," Joseph, 830 F.2d at 1023, are the engine maintenance activities of Airmotive, which took place solely in Ireland. Thus, the first clause of section 1605(a)(2) does not divest these defendants of sovereign immunity.
 
 
 22
 B. Commercial Activities Causing a "Direct Effect" in the United States
 
 
 23
 AWA also argues that the third clause of section 1605(a)(2), which excepts from the rule of immunity commercial activities carried on abroad causing a "direct effect" in the United States, divests Aerlinte and Aer Lingus of sovereign immunity. AWA argues that the financial losses it incurred as a result of Airmotive's allegedly faulty maintenance constitute a "direct effect" for purposes of section 1605(a)(2).
 
 
 24
 AWA relies principally upon the Second Circuit's decision in Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982), which AWA asserts has been approved by this Circuit in Meadows v. Dominican Republic, 817 F.2d 517 (9th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987). Texas Trading involved a suit by four trading companies against Nigeria to recover for damages suffered by the plaintiffs as a result of Nigeria's anticipatory repudiation of cement purchase contracts and related letters of credit.
 
 
 25
 To decide whether subject matter jurisdiction existed, the Texas Trading court was required to interpret the "direct effect" clause of section 1605(a)(2). 647 F.2d at 310-11. Because the FSIA does not define "direct effect," the court relied upon the basic purposes of the FSIA and examples in the case law to determine that the financial losses suffered by the plaintiff corporations were a "direct effect," within the meaning of section 1605(a)(2), of Nigeria's commercial cement purchase activities. Id. at 311-13. As the court pointed out,
 
 
 26
 [u]nlike a natural person, a corporate entity is intangible; it cannot be burned or crushed. It can only suffer financial loss. Accordingly, the relevant inquiry under the direct effect clause when plaintiff is a corporation is whether the corporation has suffered a "direct" financial loss.... Here, under either theory of recovery, breach of the cement contracts or breach of the letters of credit, the effect of the suppliers was "direct." They were beneficiaries of the contracts that were breached.
 
 
 27
 Id. at 312. According to AWA, Texas Trading stands for the proposition that any financial loss incurred by a U.S. corporation as a proximate result of the commercial activities of a foreign sovereign satisfies the third clause of section 1605(a)(2). AWA further contends that this Circuit's favorable citation to Texas Trading in Meadows, 817 F.2d at 523, implies that we adopted this "financial loss" view of the "direct effect" clause. We reject these arguments.
 
 
 28
 As we noted earlier, "direct effect" is not defined in the Act. However, the House Report accompanying the Act describes the operation of the "direct effect" clause in the following way:
 
 
 29
 The third sitaution--"an act outside the territory of the United States in connection with a commercial activity elsewhere and that act causes a direct effect in the United States"--would embrace commercial conduct abroad having direct effects within the United States which would subject such conduct to the exercise of jurisdiction by the United States consistent with principles set forth in section 18, Restatement of the Law, Second, Foreign Relations Law of the United States (1965).
 
 
 30
 House Judiciary Committee, Jurisdiction of the United States Courts in Suits Against Foreign States, H.R.Rep. No. 1487, 94th Cong., 2d Sess. 19, reprinted in 1976 U.S.Code Cong. & Admin.News 6604, 6618.
 
 Section 18 of the Restatement provides:
 
 31
 A state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct that occurs outside its territory and causes an effect within its territory, if either
 
 
 32
 (a) the conduct and its effect are generally recognized as constituent elements of a crime or tort under the law of states that have reasonably developed legal systems, or
 
 
 33
 (b)(i) the conduct and its effect are constituent elements of activity to which the rule applies; (ii) the effect within the territory is substantial; (iii) it occurs as a direct and foreseeable result of the conduct outside the territory; and (iv) the rule is not inconsistent with the principles of justice generally recognized by states that have reasonably developed legal systems.
 
 
 34
 Restatement of the Law, Second, Foreign Relations Law of the United States, section 18 (1965) (emphasis added).
 
 
 35
 Our review of the case law suggests that most courts interpreting the "direct effect" clause, looking to section 18 for guidance, have concluded that Congress intended this clause to reach only conduct causing an effect that is "substantial" and "direct and foreseeable." See e.g., Gould, 853 F.2d at 453; Zernicek v. Brown & Root, Inc., 826 F.2d 415, 417-18 (5th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988); Transamerican S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998, 1004 (D.C.Cir.1985); Ohntrup v. Firearms Center Inc., 516 F.Supp. 1281, 1286 (E.D.Pa.1981), aff'd mem., 760 F.2d 259 (3d Cir.1985). But see Texas Trading, 647 F.2d at 311 & n. 32.
 
 
 36
 However, in Texas Trading, the Second Circuit rejected the House Report's reference to section 18 of the Restatement as "a bit of a non sequitur," because section 18 concerns application of substantive American law abroad, not principles of extraterritorial jurisdiction. 647 F.2d at 311 & n. 32. Thus, the Texas Trading court rejected the view that the effect in the United States of a foreign sovereign's activities abroad must be "substantial" and "foreseeable" to fall within the third clause of section 1605(a)(2). Id. at 311 & n. 32.
 
 
 37
 AWA argues that this Circuit, in Meadows, adopted the Texas Trading approach, effectively rejecting the "substantial and foreseeable effects" standard adopted by the Third, Fifth, Sixth and D.C. Circuits. In Meadows, American businessmen brought suit against the Dominican Republic to recover a commission owed to the plaintiffs for their services in procuring a loan to finance a housing project. The district court, relying upon Texas Trading, held that their financial injury occurred as a direct result of the defendant's breach of contract, and was therefore a "direct effect" for purposes of section 1605(a)(2). 628 F.Supp. 599 at 604-05 (N.D.Cal. 1986). We affirmed, concluding that "[t]he district court correctly applied Texas Trading to the matter before us." 817 F.2d at 523.
 
 
 38
 Although the district court in Meadows clearly relied upon Texas Trading, it is not clear that it rejected the relevance of the House Report's reference to the Restatement, and therefore the applicability of a foreseeability standard. The district court's application of Texas Trading to the facts of the case before it included the following language:
 
 
 39
 It is true that the contract in this case does not call for payment at a specified bank or other location within the United States. It does, however, provide that the "transaction must be made through our bank ... and through your [plaintiffs'] bank." (Emphasis added) Thus the contract entitles plaintiffs to specify the place of payment; since plaintiffs reside in the United States, defendants could reasonably have expected that payment would be called for at a bank in the United States.
 
 
 40
 628 F.Supp. at 604-05 (emphasis in original). The highlighted language was cited in this court's opinion affirming the district court. Meadows, 817 F.2d at 523. Therefore, we conclude that the fact of payment in the United States, and the foreseeability of that payment, were critical to both courts' analysis. Consequently, Meadows does not support AWA's assertion that this Circuit has rejected the requirement that the effect be substantial and foreseeable. Rather, the holding in Meadows is consistent with a narrow reading of Texas Trading, one which focuses upon the expectation on the part of the defendant that some significant impact would occur in the United States.
 
 
 41
 The D.C. Circuit explicitly adopted such a reading of Texas Trading in Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1515 (D.C.Cir.1988). In Zedan, an engineer who had worked for a Saudi corporation building a road in Saudi Arabia sued to recover for Saudi Arabia's alleged failure to honor the contract guaranteeing certain payments. He argued that the defendant's breach had a direct effect in the United States because he returned here and suffered his financial losses here when the defendants failed to forward to him in the U.S. the money allegedly owed.
 
 
 42
 The court rejected Zedan's argument that any action causing a plaintiff to suffer a financial loss in the U.S. satisfies the "direct effect" test, holding that there was no "direct effect" in the United States. The court expressly distinguished Transamerican S.S., 767 F.2d at 1004, and Texas Trading, both of which involved the foreign sovereign's failure to transfer funds to the plaintiff's bank in the U.S. The court concluded:
 
 
 43
 But in neither Transamerican S.S. nor Texas Trading was financial loss in this country itself sufficient. In each of these cases, something legally significant actually happened in the United States; a bank refused to pay on a letter of credit, money was transferred, a debt was incurred. In each case, therefore, a foreign sovereign caused a "substantial" and "direct and foreseeable" effect in the United States.
 
 
 44
 849 F.2d at 1515.
 
 
 45
 Language in Berkovitz v. Islamic Republic of Iran, 735 F.2d 329 (9th Cir.), cert. denied, 469 U.S. 1035, 105 S.Ct. 510, 83 L.Ed.2d 401 (1984), suggesting approval of the "substantial and foreseeable effect" standard further undermines AWA's argument that this Circuit has rejected that approach. In Berkovitz, the wife and children of an American citizen murdered in Iran brought a wrongful death action against Iran. We affirmed the district court's dismissal of the action, holding that any injury to the victim's relatives in the United States was not a "direct effect." 735 F.2d at 332. Berkovitz cited favorably to the House Report and its reference to section 18, noting specifically the emphasis on "direct and foreseeable result[s]." Id. (emphasis added).
 
 
 46
 In short, this Circuit is in agreement with most courts analyzing the "direct effect" clause of section 1605(a)(2). A foreign sovereign's activities must cause an effect in the United States that is substantial and foreseeable in order to abrogate sovereign immunity. Mere financial loss incurred by a U.S. corporation does not, in itself, constitute a "direct effect" for purposes of section 1605(a)(2). See Gregorian v. Izvestia, 871 F.2d 1515, 1526-27 (9th Cir.1989).
 
 
 47
 Applying the "substantial and foreseeable effect" test to this case, we find no "direct effect," and therefore no subject matter jurisdiction. From Airmotive's standpoint, it was not foreseeable that its maintenance activities in Ireland would have an effect in the United States. According to the affidavit of John Horan, Secretary of Airmotive, when Airmotive performed work on the aircraft engine, it was not aware that the engine would be used in the United States. When the work was performed, the engine was still owned by GPA Group, Ltd. AWA presented no competent evidence sufficient to rebut the defendants' affidavits. In effect, then, the U.S. contacts were "purely fortuitous in that they depended solely on the fact that the injured [corporation] happened to be American." Callejo v. Bancomer, S.A., 764 F.2d 1101, 1111 (5th Cir.1985). Thus, the effect in the United States of Airmotive's allegedly improper repair work is insufficiently direct to deprive Airmotive of sovereign immunity. The district court correctly concluded that there is no subject matter jurisdiction under 28 U.S.C. Sec. 1330(a).
 
 
 48
 Because no subject matter jurisdiction exists, we need not address whether Aerlinte or Air Lingus were subject to personal jurisdiction. The lack of subject matter jurisdiction under the FSIA also disposes of the claims against Pratt & Whitney and United Technologies. Like AWA, these defendants were Delaware corporations. There is no alternative basis for federal jurisdiction against these defendants.
 
 III. CLAIMS AGAINST GPA
 
 49
 Jurisdiction over GPA Corporation is not dependent upon jurisdiction over Airmotive or Aerlinte. Were GPA the only defendant, there would be diversity jurisdiction. Thus, the claims against GPA must be analyzed separately. The district court granted GPA's motion to dismiss for lack of personal jurisdiction and for failure to state a claim.[4] The district court based both conclusions upon the finding that GPA Corporation was not a party to the contract forming the basis for AWA's cause of action, and that AWA therefore "sued the wrong defendant."
 
 
 50
 AWA appears to have no evidence beyond the allegations in its complaint to show that GPA Corporation was a party to the contract. The agreement itself, appended to AWA's complaint, clearly states that AWA agreed to purchase a Boeing 737-400 aircraft from GPA Leasing (NA) N.V., not GPA Corporation. This evidence is supported by the affidavit of J. Michael Beard, Vice President of Marketing of GPA Corporation, which states that GPA Corporation did not enter into the contract forming the basis of AWA's cause of action.
 
 
 51
 AWA contends that it has made allegations linking GPA Corporation to the transaction. Specifically, it has argued throughout this litigation that GPA Corporation President, Graham A. Boyd, who signed the agreement on behalf of GPA Leasing, was actually acting on behalf of GPA Corporation. AWA's allegations have been contradicted by affidavit, and it has not come forward with sufficient evidence to overcome the defendant's response.[5] The district court's judgment in favor of GPA Corporation is affirmed on this basis.
 
 IV. FAILURE TO ALLOW FURTHER DISCOVERY
 
 52
 AWA claims that the court erred by failing to allow AWA the opportunity to develop relevant evidentiary facts through discovery before dismissing its case. The district court's decision not to allow further time for discovery before dismissing AWA's action is reviewed for abuse of discretion. Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430-31, n. 24 (9th Cir.1977). The basic outlines of the law on this issue are fairly well-defined. It is clear that the question of whether to allow discovery is generally within the discretion of the trial judge. Id. However, where pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed. Id.
 
 
 53
 AWA argues that the court's dismissal of its action on the basis of the defendants' affidavits despite the defendants' failure to answer AWA's interrogatories was an abuse of discretion. Several cases cited in AWA's brief support its general assertion that plaintiffs ought to be afforded an opportunity to conduct discovery prior to a court's dismissal for lack of jurisdiction. One case with similar facts is Blanco v. Carigulf Lines, 632 F.2d 656 (5th Cir.1980). In that case, the district court dismissed an injured seaman's complaint for lack of jurisdiction despite the fact that answers to plaintiff's interrogatories were pending and overdue. The district court's action was based solely upon the defendant's affidavits. The Fifth Circuit reversed, stating:
 
 
 54
 We hold under the circumstances of this case, that the district court dismissal for lack of jurisdiction was error. Plaintiff is not required to rely exclusively upon a defendant's affidavit for resolution of the jurisdictional issue where that defendant has failed to answer plaintiff's interrogatories specifically directed to that issue. To hold otherwise would permit an advantage to a defendant who fails to comply with the rules of discovery.
 
 
 55
 632 F.2d at 658.
 
 
 56
 However, Wells Fargo states that a trial court's refusal to allow further discovery before dismissing on jurisdictional grounds is not an abuse of discretion "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." 556 F.2d at 431, n. 24. AWA's document requests and interrogatories to Aerlinte and the other defendants were largely unrelated to the facts central to the jurisdictional issues. It also appears that any questions relating to jurisdiction were answered in the affidavits. Thus, it is difficult to see how receiving answers to the interrogatories would have provided AWA with information to aid its assertion of jurisdiction.[6] Moreover, we find it significant that in the ten months between submission of the interrogatories and the hearing on the motions to dismiss, AWA did not seek to compel discovery or expressly request additional time for discovery. Consequently, we hold that the district court did not abuse its discretion in deciding the jurisdictional issue without allowing additional time for discovery.
 
 
 57
 V. REFUSAL TO ALLOW SECOND AMENDED COMPLAINT
 
 
 58
 AWA argues that the district court erred in refusing to allow AWA to add a cause of action against Aer Lingus for breach of contract. We review for abuse of discretion. Klamath-Lake Pharm. Ass'n v. Klamath Medical Serv. Bureau, 701 F.2d 1276, 1292 (9th Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). The district court did not abuse its discretion in refusing to allow AWA to again amend its complaint. The district court concluded that this was merely another effort to establish jurisdiction through allegations that simply could not be proven. The allegations contradicted sworn affidavits and the contents of the contract between AWA and GPA Leasing. Thus, the court could legitimately determine that amendment would be futile. Klamath-Lake, 701 F.2d at 1293.
 
 VI. CONCLUSION
 
 59
 There is no subject matter jurisdiction under the FSIA over AWA's claims against Aerlinte and Airmotive. There is no basis to assert federal jurisdiction over United Technologies and Pratt & Whitney. The district court's judgment in favor of GPA Corporation was proper. The district court did not abuse its discretion in ruling on the defendants' motions without allowing further discovery, or in refusing to allow AWA again to amend its complaint. The district court's judgment is AFFIRMED.
 
 
 
 *
 Hon. Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 The contract clearly specified that GPA Leasing was the seller of the aircraft. Nevertheless, AWA alleges that it was, in fact, negotiating with GPA Corporation, a Connecticut Corporation
 
 
 [2]
 Again, there is a major dispute as to the identities of the parties. According to AWA, the full name of the national airline of Ireland is Aer Lingus Teoranta, which is a corporation comprised of two companies, Aer Lingus and Aer Linte Eirann Teoranta. AWA contends that Airmotive is a subsidiary of Aer Lingus Teoranta. However, Airmotive states that the national airline of Ireland is composed of two entirely separate entities, Aerlinte Eireann Teoranta ("Aerlinte") and Aer Lingus, PLC ("Aer Lingus"), both of which are 100% owned by the Republic of Ireland. Aerlinte, the commercial air carrier, performs no engine overhaul work, and owns no stock in Airmotive. Airmotive, the aircraft maintenance subsidiary which allegedly worked on the AWA engine, is a wholly-owned subsidiary of Aer Lingus. The district court concluded that there was "clear evidence" that Aerlinte and Aer Lingus are separate entities
 
 
 [3]
 Thus, this case is unlike Sugarman, 626 F.2d at 272-73, in which the Third Circuit found a nexus between a passenger's claim arising from the delay of an Aeromexico flight, and the defendant's airline operations in the United States. Although the delay occurred while Sugarman was in Mexico, his tickets were purchased in New Jersey, and the delayed flight was the homeward portion of a round-trip flight from New York City to Acapulco. Id. at 273. Barkanic v. General Admin. of Civil Aviation, 822 F.2d 11 (2d Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987), is similarly distinguishable. In Barkanic, the Second Circuit found a nexus between a wrongful death action following the crash of a domestic flight in China and the defendant airline's issuance of the decedents' tickets in the United States through a U.S. travel agent
 
 
 [4]
 Because the district court relied upon matters outside the pleadings, the motion to dismiss is more appropriately characterized as a motion for summary judgment. Fed.R.Civ.P. 12(b); First Pacific Bancorp, Inc. v. Bro, 847 F.2d 542, 545 (9th Cir.1988). We review de novo. Id
 
 
 [5]
 The only evidence offered by AWA is what it addressed a letter relating to this transaction to Boyd in his capacity as President of GPA Corporation. This does not refute that the party to the contract was GPA Leasing, and that GPA Corporation was not involved
 
 
 [6]
 Thus, Blanco is distinguishable because more than twenty of plaintiff's interrogatories in that case specifically related to jurisdiction. The court apparently assumed that answers to those interrogatories would have divulged information not presented in the affidavits. That is not the case here